COURT OF APPEALS
DECISION
DATED AND FILED

August 6, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP708-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF212

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

DANIEL A. BLASEL,

DEFENDANT-RESPONDENT-CROSS-APPELLANT.

APPEAL from an order; CROSS-APPEAL from a judgment of the circuit court for Wood County: TROY L. NIELSEN and TODD P. WOLF, Judges. *Judgment affirmed; order reversed and cause remanded*.

Before Graham, P.J., Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Following a jury trial, Daniel Blasel was convicted of one count of first-degree sexual assault of a child.  The main evidence against Blasel was the child's recorded forensic interview, in which she said that Blasel and his adult son had both assaulted her in similar ways on separate occasions.  In a postconviction motion, Blasel argued, among other things, that his trial counsel was constitutionally ineffective by allowing the jury to hear the portions of the recording that contained the statements about Blasel's son's conduct.  The postconviction court concluded that counsel was ineffective with respect to these statements and granted Blasel a new trial on that basis.  At the same time, the court rejected other arguments Blasel made in favor of a new trial.  The State appeals, and Blasel cross-appeals.

¶2     In its appeal, the State argues that trial counsel's decision to allow the jury to hear the allegations against Blasel's son was reasonable and strategic and, therefore, that counsel was not constitutionally ineffective.  We agree and reverse the portion of the postconviction order that granted Blasel a new trial.

¶3     In his cross-appeal, Blasel argues that we can affirm the grant of a new trial on alternative grounds that the postconviction court rejected. Specifically, Blasel argues that his trial counsel was constitutionally ineffective by failing to prevent the jury from hearing evidence that Blasel assaulted the child on more than one occasion, and by failing to request a jury instruction on unanimity. Blasel also argues that the circuit court erred when it determined that the child's privileged healthcare records were inadmissible.  We reject these arguments.[1]

---

[1] The Honorable Todd P. Wolf presided over the pretrial and trial proceedings, and we refer to Judge Wolf's court as the circuit court.  The Honorable Troy L. Nielsen presided over the postconviction proceedings, and we refer to Judge Nielson's court as the postconviction court.

## BACKGROUND

¶4     The State alleges that Blasel had sexual intercourse (specifically, oral intercourse) with "A.B." between November 1, 2016, and March 20, 2017, when A.B. was in the second grade.[2]

¶5     In 2017, within months of the alleged assaults, A.B. first told her mother that she had been sexually assaulted. A forensic interview was conducted shortly thereafter, but A.B. did not disclose any sexual assaults to the interviewer and the State did not move forward with any charges at that time.

¶6     After the relationship between Blasel and A.B.'s mother ended in 2020, A.B. again told her mother about the assaults that had occurred when she was in the second grade. Another forensic interview was conducted, and in this interview A.B. described being sexually assaulted by Blasel and his son during that time period. The State charged each of the men with one count of first-degree sexual assault contrary to WIS. STAT. § 948.02(1)(e). The State had intended to try both defendants in a joint trial, but Blasel's son entered a no-contest plea to reduced charges shortly before the scheduled trial. The case proceeded against Blasel alone.

¶7     Prior to the trial, Blasel filed a motion requesting an in-camera inspection of A.B.'s privileged healthcare records, and the circuit court granted the motion based on the then-existing state of the law. *See State v. Shiffra*, 175 Wis. 2d 600, 605, 499 N.W.2d 719 (Ct. App. 1993); *see also State v. Green*, 2002

---

[2] To protect her privacy, we refer to the victim using initials that do not correspond to her real name. *See* WIS. STAT. RULE 809.86 (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

3

WI 68, 253 Wis. 2d 356, 646 N.W.2d 298. Following the in-camera inspection, the court determined that certain records should be made available to Blasel.

¶8　However, on the eve of trial, the State asked the circuit court to exclude A.B.'s privileged healthcare records. Specifically, the State argued that in light of our supreme court's decision in *State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174 (overruling *Shiffra* and related cases), Blasel had "no legal basis for possessing or using" the records. After hearing arguments from both sides, the court granted the State's motion, at least in part. The court ruled that the parties could neither "reference nor use the privileged information" from A.B.'s records at trial, but that the parties were free to use information they obtained through "a collateral source."

¶9　The jury trial was held over three days. We provide a general overview of what occurred at trial in this background section, and we provide additional detail as needed in the discussion section below.

¶10　The State's case primarily rested on A.B.'s 2020 forensic interview, which was played in full for the jury. In the recorded interview, A.B. made statements that clearly indicated that Blasel had assaulted her on more than one occasion, and she described one instance of sexual intercourse in detail. According to A.B., that assault occurred "somewhere around winter" of her second-grade year when it was "snowing outside" and her mother was not home. A.B. told the interviewer that on this particular occasion, Blasel flicked his tongue at her, which according to A.B., was something that Blasel did as a precursor to an assault. A.B. stated that she then went into Blasel's bedroom with him. She was lying on her stomach on Blasel's bed, and Blasel pulled off her underwear, flipped

4

her onto her back, and licked her "lower private part." He then took off his underwear, put his "private part in [her] mouth," and kissed her.

¶11 Although much of the 2020 forensic interview concerned A.B.'s statements about Blasel, the jury also heard the portion of the interview in which she said that Blasel's son assaulted her. As pertinent here, there were similarities between A.B.'s description of Blasel's conduct and her description of the son's conduct—the most notable being that, before an assault, the son would also flick his tongue at A.B. to signal that she should go with him. A.B. said that, like Blasel, the son would "lick [her] lower private part" and then put his "private part" in her mouth. A.B. also described an incident in which Blasel's son put his "lower private part in [her] butt" and an incident in which Blasel's other son witnessed one of Blasel's son's assaults.

¶12 Trial counsel did not object to any portion of the recording being played for the jury. Indeed, when the circuit court raised the issue of A.B.'s statements about Blasel's son with the parties, counsel indicated that he had a reason for wanting the jury to watch the entire forensic interview.

¶13 In addition to playing the recording of the 2020 forensic interview, the State presented in-person testimony from A.B. and her mother. The State also presented testimony from a relative of Blasel's ex-wife, who testified that Blasel had sexually assaulted her in a similar manner when she was 12 years old. And the State presented testimony from an expert on child sexual assault, who provided context about A.B.'s failure to disclose the assaults in 2017. Specifically, the expert testified that a "good majority" of child victims delay in disclosing assaults and that delays are often influenced by the child not wanting to disrupt a family relationship.

¶14    Blasel's defense strategy was to challenge A.B.'s credibility. Trial counsel played the recording of the 2017 forensic interview, in which A.B. did not disclose any assaults. Counsel also presented the testimony of Blasel's other son, who testified, contrary to A.B.'s account, that he did not see any assaults occur in the home. Finally, counsel presented the testimony of an acquaintance of A.B., who testified that A.B. had told her that she lied about being assaulted.

¶15    In closing arguments, trial counsel raised multiple reasons that the jury might question the veracity of A.B.'s allegations. These reasons included but were not limited to the potential influence by A.B.'s biological father, A.B.'s demeanor during the interview, testimony from Blasel's other son that conflicted with statements A.B. made in the forensic interview, and the statements A.B. made about Blasel's son. With respect to the latter point, counsel highlighted the odd similarities between A.B.'s accounts about both men, in particular A.B.'s claim that Blasel and his son both flicked their tongues before assaulting her. Counsel argued that such a claim was "completely incredible" and that A.B. was essentially alleging that "[Blasel] and [his son] had this weird agreement … that they would do this tongue flick, and then they would take this girl and have their way with her."

¶16    The jury found Blasel guilty. Blasel filed a postconviction motion seeking a new trial. Among other things, Blasel argued that his trial counsel was ineffective for allowing the jury to hear the portion of the forensic interview that concerned the allegations against his son. Specifically, Blasel argued that the evidence of the son's assaults "was likely to enflame the jury's passion" and "invite the jury to find … Blasel guilty, not because the evidence proved him guilty beyond a reasonable doubt, but because" the jury "pitied" A.B. for having been "sexually assaulted by two different men in her home." Blasel also argued

that counsel was ineffective for failing to object to evidence in the forensic interview that suggested that Blasel had assaulted A.B. on more than one occasion and for failing to request a unanimity instruction.

¶17     Following a ***Machner*** hearing,[3] the postconviction court granted Blasel's motion for a new trial.  Specifically, the court determined that trial counsel was ineffective for allowing the jury to hear the portion of the forensic interview that concerned Blasel's son, and that counsel's error undermined its confidence in the outcome.  As for counsel's failure to object to the portions of the forensic interview that concerned other acts by Blasel and to request a unanimity instruction, the court determined that counsel was not ineffective.  We discuss the court's decision in more detail as needed below.

## DISCUSSION

¶18     The State appeals the order granting a new trial, and Blasel cross-appeals the postconviction court's rejection of his alternative ineffective assistance arguments and the circuit court's pre-trial order regarding A.B.'s healthcare records.[4]  We address the State's appeal and Blasel's cross-appeal in that order.

---

[3] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).  A ***Machner*** hearing is "[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain [counsel's] handling of the case." ***State v. Balliette***, 2011 WI 79, ¶31, 336 Wis. 2d 358, 805 N.W.2d 334.

[4] The issue with respect to the healthcare records was not included in Blasel's postconviction motion, but the State does not ask us to reject it on that basis. We assume without deciding that Blasel properly challenged that order on appeal under WIS. STAT. § 974.02(2), which provides that an appellant is not required to file a postconviction motion in the circuit court before an appeal "if the grounds are … issues previously raised."  Here, the issues regarding the healthcare records were raised and addressed in the pre-trial proceedings.

## I. The State's Appeal

¶19    In its appeal, the State challenges the postconviction court's determination that Blasel's trial counsel was ineffective with respect to the portion of the forensic interview that concerned Blasel's son. Before addressing the parties' arguments on this topic, we provide additional background about the pre-trial and trial proceedings, the *Machner* hearing, and the postconviction decision.

### A. Additional Background

¶20    Prior to trial, the State moved to admit the recording of A.B.'s 2020 forensic interview. *See* WIS. STAT. § 908.08(1) (providing a procedure that allows "audiovisual recording of an oral statement of a child who is available to testify" to be admitted as evidence in certain circumstances). Blasel's trial counsel was aware that the recording contained some content that was potentially objectionable, but counsel did not oppose the State's motion, and counsel knew that this would mean that the jury would also hear A.B.'s statements about Blasel's son.

¶21    Then, on the morning of trial, the circuit court and parties discussed what, if anything, should be said to the jury about the status of Blasel's son's case. As noted, the original plan had been for both defendants to be tried together, but the son had recently entered a plea. Blasel's trial counsel successfully argued that the State should only be permitted to say that A.B. had also made allegations about the son, and should not be permitted to tell the jury that Blasel's son had been charged or convicted.

¶22    The State played the recording of A.B.'s 2020 forensic interview as part of its presentation of evidence. After the recording was played, the circuit

court confirmed that the parties "wanted" the jury to hear the portions of the interview that were almost entirely devoted to A.B.'s statements about Blasel's son. Both parties responded in the affirmative. The court asked trial counsel, "I'm assuming there was a reason that … the defense wanted that in," and trial counsel responded, "That's true."

¶23 At the *Machner* hearing, trial counsel expanded on his reasons for wanting the jury to hear the portion of the forensic interview about Blasel's son. Specifically, counsel testified that his overall strategy was to discredit A.B.'s account, and counsel thought that this portion of the interview could lead the jury to "disbelieve" A.B.'s statements about Blasel. Counsel explained that, if the jury heard the portion of the forensic interview that was about Blasel's son, the jury would learn that A.B. accused both men of very similar behavior, down to the allegation that they both flicked their tongue as a precursor to an assault. In counsel's opinion, the fact that A.B. attributed "eerily similar" behavior to two different men could make her statements seem "fantastical" and less believable to a jury. As counsel put it, "the jury would have had to believe that this father and son" had the same "very strange plan to molest the same child," which counsel did not think "a jury would necessarily buy."

¶24 Relatedly, counsel testified that by allowing the jury to hear that A.B. had also accused Blasel's son of assault, he would have the option to "point the finger" at Blasel's son and suggest that he was A.B.'s sole assailant. Although counsel did not explicitly advance this argument at trial, he explained at the *Machner* hearing that he opted to take a "soft *Denny*" approach, where "you …

get at the fact that someone else may have done it without actually saying that person did it."[5]

¶25 In its oral ruling on Blasel's postconviction motion, the postconviction court appeared to credit trial counsel's testimony that he had a strategic reason for wanting the jury to hear the information about Blasel's son. However, in the court's view, counsel's assertions about a "soft *Denny*" approach did not "fit real well" with what actually happened at trial, rendering counsel's strategy "constitutionally unreasonable." Among other things, the court opined that the strategy would have been reasonable if counsel had "vigorously pointed the finger" at Blasel's son, but counsel "never did that."

¶26 As for counsel's view that A.B.'s account of what both men did was too "fantastical" to be believed, the postconviction court could not "get [its] head around" that strategy. The court considered the allegations here to be the same kind of "run of the mill allegations" that are commonly made in child sexual assault cases, and there was nothing that the court found "to be all that shocking or outlandish or incredible." Perhaps such a strategy made sense when Blasel and his son were meant to be tried jointly, the court opined, but counsel should have adjusted his strategy when it became clear that Blasel would be tried alone.

---

[5] *State v. Denny*, 120 Wis. 2d 614, 357 N.W.2d 12 (Ct. App. 1984). *Denny* establishes criteria for the admissibility of evidence that an alleged "third-party perpetrator" committed the crime, and it requires a defendant who wants to introduce so-called *Denny* evidence to file a pre-trial motion to admit such evidence. *See State v. Wilson*, 2015 WI 48, ¶¶51-52, 362 Wis. 2d 193, 864 N.W.2d 52. We understand the references to a "soft *Denny*" approach to mean an approach in which the defense insinuates that someone else may be the culpable party without having to prevail on a *Denny* motion, while at the same time leaving other defenses open.

¶27    For these reasons, the postconviction court determined that trial counsel's performance was deficient.  The court further determined that Blasel was prejudiced by counsel's performance.  The court stated that the evidence that A.B. was also victimized by Blasel's son was "highly prejudicial evidence" in a case like this that "wasn't … open and shut."  Therefore, the court determined that Blasel had met his burden to show a reasonable probability of a different result but for counsel's error.

## B. Analysis

¶28    "[A] criminal defendant is guaranteed the right to effective assistance of counsel."  *State v. Balliette*, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 (identifying the sources of the constitutional right as the Sixth and Fourteenth Amendments to the United States Constitution); *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305 (providing that the same right is guaranteed under Article I, Section 7 of the Wisconsin Constitution).  Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact.  *Thiel*, 264 Wis. 2d 571, ¶21.  We uphold the circuit court's factual findings unless the findings are clearly erroneous, but whether counsel's conduct constitutes ineffective assistance is a question of law that we review de novo.  *Id.*

¶29    To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  As we now explain, Blasel does not satisfy either prong.

¶30    To prevail on the deficiency prong, a defendant must demonstrate that trial counsel's decision or strategy "fell below an objective standard of reasonableness."  *Id.* at 688.  This can be a difficult burden to satisfy, given that

counsel enjoys a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance." *Id.* at 689. Indeed, counsel's performance "need not be perfect, … [or] even very good, to be constitutionally adequate." *Thiel*, 264 Wis. 2d 571, ¶19 (citation omitted). Reviewing courts are to "apply[] a heavy measure of deference to counsel's judgment," *Strickland*, 466 U.S. at 690-91, and will not "second-guess a reasonable trial strategy" unless it was "irrational" or "based upon caprice rather than … judgment." *State v. Brietzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. To prevail, a defendant must show that counsel's approach or strategy was one that "no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021).

¶31    Blasel fails to make that showing. As noted, trial counsel's strategy was to challenge the credibility of A.B.'s account that Blasel had assaulted her. And here, counsel reasonably determined that he could mount a stronger challenge to A.B.'s credibility, and in turn to her statements about Blasel, if he was able to show that A.B.'s account of assaults by Blasel closely mirrored her account of assaults by Blasel's son. If jurors were to fully credit A.B.'s account, they would have to believe that Blasel and his son separately engaged in the same specific behavior. Counsel reasonably determined that the similarities in the accounts might make some jurors question whether the entirety of A.B.'s account was fabricated.

¶32    Moreover, there was benefit to counsel's strategy, even if the similarities did not cause the jury to discredit A.B.'s account in its entirety. Even if some jurors were persuaded that *someone* had sexually assaulted A.B. in the manner she described, they might find it more likely that the assaults were perpetrated by *just one of the two men*, and to be unable to find that the State

carried its beyond-a-reasonable-doubt burden to prove that that man was *Blasel*. A.B. oscillated between talking about the two men during her interview, and the allegations against the son provided an alternative potential source for A.B.'s knowledge of sexual matters. If some jurors inferred that the son might have been the sole assailant and that A.B. was projecting his conduct onto Blasel, the jury would be unable to unanimously find that Blasel had sexual intercourse with A.B. during the relevant date range.

¶33 Like trial counsel, we see little if any strategic benefit in seeking to exclude the portions of the recording in which A.B. discussed assaults by Blasel's son. Had counsel opted for that approach, the jury would have been left with a detailed and reasonably straightforward account in which Blasel was A.B.'s sole assailant, and there is nothing inherently incredible about that account. Rather, counsel reasonably concluded that it was the fact that A.B. accused the two men of similar but separate assaults, including the same odd quirk of flicking their tongues, that might create or amplify reasonable doubt about the veracity of A.B.'s statements about Blasel. That is, counsel reasonably determined that A.B.'s statements about Blasel's son could be used to challenge her credibility, and that a jury might find A.B.'s account more difficult to credit when the recording was played in its entirety than it would have been for the jury to credit an edited recording that provided a detailed account about a sole perpetrator.

¶34 The postconviction court appears to have determined that the only reasonable strategic use of A.B.'s statements about Blasel's son would have been to "vigorously point[] the finger." We disagree. As the Supreme Court has explained, "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S at 689. Although counsel could have been

13

more explicit, "[t]here are countless ways to provide effective assistance" in any given case. *Id.* Here, counsel pointed to the similarities between A.B.'s statements about Blasel and her statements about Blasel's son, and let the jury draw its own conclusions. Under the circumstances, such an approach was, at the very least, "constitutionally adequate." *See Thiel*, 264 Wis. 2d 571, ¶19 (citation omitted). Accordingly, for all these reasons, we are not persuaded that counsel took an approach that was "irrational" or "based upon caprice rather than … judgment," *Brietzman*, 378 Wis. 2d 431, ¶65, or that "no competent lawyer" would have taken, *see Dunn*, 594 U.S. at 739.

¶35 In arguing to the contrary, Blasel asserts that the postconviction court's determination that trial counsel performed deficiently is insulated by the court's factual findings. As noted, we will not overturn the court's factual findings unless they are clearly erroneous, and Blasel appears to argue that the court's decision rests on two findings that are not clearly erroneous. *See Brietzman*, 378 Wis. 2d 431, ¶37.

¶36 First, Blasel points to the postconviction court's comments that, in the court's view, using the evidence about Blasel's son to challenge the credibility of A.B.'s allegations was not a good "fit" for the case. The judge had explained that, in his former role as public defender, he had handled sexual assault cases where the victim had made "pretty outrageous claims" such as being "abducted by aliens." In that scenario, he had "wanted that evidence to come in, because it … undercut the victim's story and claims." Here, by contrast, the court considered the allegations to be the same kind of "run of the mill allegations we see in a child sexual assault case," and there was nothing about A.B.'s account that the court found "to be all that shocking or outlandish or incredible."

14

¶37 It is true that there is not anything that is inherently unbelievable about A.B.'s account that a man flicked his tongue at her and then had sexual intercourse with her in the manner that A.B. described. However, as explained above, trial counsel determined that A.B.'s statements about Blasel's son were useful—not because either account was inherently unbelievable in and of itself, but because she alleged that two different men engaged in similar behavior in separate, isolated incidents. The postconviction court did not appear to grapple with this rationale in its decision, but given the parallels between the allegations, we are not persuaded that counsel's strategy was a bad fit for this case. To the extent that the court's discussion on this topic constitutes a finding of fact, the finding is clearly erroneous.

¶38 Second, Blasel points to the postconviction court's comments with respect to trial counsel's "soft *Denny*" approach. The court acknowledged that using the information to point the finger at Blasel's son "mad[e] sense," but the court found that counsel did not actually pursue that strategy at trial. Blasel contends that the court's determination that counsel was deficient rests on this finding, and we therefore must determine that the finding is clearly erroneous before we can conclude that counsel did not perform deficiently.

¶39 We disagree. Whether counsel performed deficiently is "a question of law" that we consider independently of the postconviction court, *see Brietzman*, 378 Wis. 2d 431, ¶38, and here, we have determined that counsel's strategy was reasonable, even though counsel did not explicitly blame the abuse on Blasel's son at trial. *See supra* ¶¶31-34.

¶40 Having determined that trial counsel's performance was not deficient, we need not consider whether Blasel was prejudiced by counsel's failure

15

to object to the portion of the forensic interview that concerned Blasel's son. *See Brietzman*, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong [of the ineffective assistance of counsel test], we need not consider the other."). We nonetheless briefly explain why Blasel fails to show that he was prejudiced by the introduction of the portions of the recording that concerned his son.

¶41     To prevail on the prejudice prong of the ineffective assistance of counsel test, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶42     Here, the evidence concerning Blasel's son had no direct bearing on any of the elements that the jury needed to find beyond a reasonable doubt in order to convict Blasel. To illustrate, the jury was asked, in relevant part, whether the State proved that Blasel had sexual intercourse with A.B. during the relevant time period. *See* WIS. STAT. § 948.02(1)(e); WIS JI—CRIMINAL 2102E. As Blasel acknowledges in his briefing, the evidence that *Blasel's son* assaulted A.B. has no direct bearing on whether *Blasel* assaulted A.B. in a separate incident that occurred at a different time. Under the circumstances, it is difficult to conceive of how the admission of the evidence about Blasel's son made a guilty verdict more likely than it would have been without the evidence.

¶43     In arguing to the contrary, Blasel contends that the evidence about his son presented a risk that the jury would convict him out of sympathy for A.B., and not because the evidence the State presented proved him guilty beyond a reasonable doubt. Blasel contends that, after hearing A.B.'s account that she was assaulted by Blasel and his son, "[t]he jury probably viewed the situation as here is

16

this poor child, trapped in a household, being preyed upon by a father-son sexual assault team," and under the circumstances, it would be "practically impossible for the jury to decide the case fairly and dispassionately." We reject this argument for two reasons.

¶44 First, as discussed above, there was an upside to the evidence, and Blasel's argument about prejudice wholly disregards that upside. To be sure, to the extent that the jury credited A.B.'s account that she had been assaulted by two different men in the same household, that would be likely to increase the jury's sympathy for what she had been through. Yet, such sympathy would only arise if the jury credited A.B.'s account in its entirety, and, as we have discussed, the evidence of A.B.'s statements concerning the son increased the chances that the jury would not fully credit A.B.'s account.

¶45 Second, the circuit court explicitly instructed the jury that its verdict should "not be swayed [by] sympathy, prejudice, or passion," and that it should not enter a guilty verdict unless the State proved all of the elements of the crime beyond a reasonable doubt. Wisconsin appellate courts "presume the jury follows the instructions given to it." *State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989). Accordingly, even if the jury felt sympathy for A.B., Blasel does not persuade us that there is a reasonable probability that the jury disregarded its charge and found Blasel guilty despite an insufficient showing by the State. Notably, Blasel does not develop an argument that the evidence was insufficient for a jury to find guilt beyond a reasonable doubt.

¶46 For all these reasons above, we conclude that the postconviction court erred when it granted Blasel a new trial on the ground that his trial counsel

17

was constitutionally ineffective for allowing the jury to view the portion of the forensic interview concerning Blasel's son.

## II. Cross Appeal: Ineffective Assistance

¶47     As part of his cross-appeal, Blasel argues that his trial counsel was constitutionally ineffective when he failed to seek to exclude evidence that Blasel assaulted A.B. on more than one occasion, and when counsel failed to request a unanimity instruction.  Both of these arguments are founded on statements from A.B.'s forensic interview, and we address them in turn.

## A.  Failure to Object

¶48     By way of background, a good portion of the forensic interview was devoted to A.B.'s description of one instance of sexual intercourse that allegedly occurred in Blasel's bedroom in the winter of her second-grade year.  However, A.B.'s statements also suggested that Blasel had assaulted her on other occasions. For example, A.B. said that Blasel "always" flicked his tongue at her before assaulting her, and that Blasel usually assaulted her in his bedroom and "only rarely" did so in another bedroom.  The interviewer asked A.B. to describe an assault that happened in the other bedroom, but A.B. was only able to give a few details before saying that she could not "remember the rest."

¶49     Because the State charged Blasel with just one count of sexual assault, he argues that his trial counsel should have objected to the admission of any statements in A.B.'s forensic interview that suggested that Blasel had also assaulted her on other occasions.  According to Blasel, it was "extremely prejudicial" for the State to introduce evidence of multiple assaults because it presented "the danger" that the jury would find him guilty "not because the State

proved him guilty beyond a reasonable doubt, but because the jury simply believed him to be a bad person who must have done something to [A.B.]"

¶50    Whether trial counsel was constitutionally ineffective for failing to object to the admission of evidence turns, in part, on whether the objection would have been successful. As Wisconsin courts have explained, "[a]n attorney does not perform deficiently by failing to make a losing argument." *State v. Jacobsen*, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365; *see also* *State v. Counihan*, 2020 WI 12, ¶51 n.15, 390 Wis. 2d 172, 938 N.W.2d 530 ("The failure to raise a meritless objection does not constitute deficient performance."). Here, the postconviction court determined that the circuit court would have denied any such objection based on the evidentiary rule and related case law regarding other-acts evidence in child sexual assault cases. *See* WIS. STAT. § 904.04(2)(b); *State v. Sullivan*, 216 Wis. 2d 768, 771-73, 576 N.W.2d 30 (1998) (providing that other-acts evidence can be admitted when it complies with a three-step framework); *State v. Gutierrez*, 2020 WI 52, ¶29, 391 Wis. 2d 799, 943 N.W.2d 870 (providing that the greater latitude rule "liberalizes each of *Sullivan*'s three prongs in favor of admitting similar acts of child sexual assault").

¶51    At no point in his briefing does Blasel wrestle with the postconviction court's determination that an objection would have been overruled. That is, Blasel does not explain how *Sullivan* supports his position that the circuit court would have excluded the other-acts evidence, had his trial counsel objected. Instead, in his cross-appellant's reply brief, Blasel attempts to suggest that it is actually the State's burden to demonstrate that the other-acts evidence was admissible under the *Sullivan* framework.

¶52 Blasel misconstrues the applicable burden. Although the burden to prove that other-acts evidence is admissible is generally on the proponent of the evidence, we are not evaluating an appeal of a circuit court's decision to admit evidence. We are instead evaluating Blasel's claim that trial counsel was ineffective for failing to object to the admission of evidence, and part of that requires Blasel to prove that there was a meritorious objection to make. *See Counihan*, 390 Wis. 2d 172, ¶51 n.15. As applied here, that means it was his burden to show that had trial counsel objected, the circuit court would have found Blasel's other acts inadmissible under the *Sullivan* framework. At no point does Blasel apply the *Sullivan* analysis to make such a showing. By failing to grapple with the court's reasoning with respect to deficient performance, Blasel fails to persuade us that the postconviction court erred. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("Arguments unsupported by legal authority will not be considered … and we will not abandon our neutrality to develop arguments."). We therefore reject his ineffective assistance of counsel claim regarding the evidence that Blasel committed multiple assaults.

## B. Unanimity Instruction

¶53 Blasel argues that, because the State presented evidence that he assaulted A.B. on more than one occasion, his trial counsel was ineffective for failing to request the standard jury instruction on unanimity. We reject this argument for reasons we now explain.

¶54 In Wisconsin, criminal defendants have a "right to a unanimous verdict." *State v. Wulff*, 207 Wis. 2d 143, 150 n.3, 557 N.W.2d 813 (1997) (identifying Article I, Sections 5 and 7 of the Wisconsin Constitution as the source

of the rule); *see also* **Ramos v. Louisiana**, 590 U.S. 83, 88-93 (2020) (discussing the unanimity requirement under the U.S. Constitution). "[T]he unanimity requirement … ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." **State v. Lomargo**, 113 Wis. 2d 582, 591, 335 N.W.2d 583 (1983).

¶55    A unanimity problem can arise when a single count of a criminal offense is charged, but the State "introduces evidence of multiple acts," any one of which could "separately constitute the criminal offense charged." *See id.* at 590. In that scenario, there is a risk that the jurors will convict without unanimously agreeing on which of the acts forms the basis of the conviction. That risk can be avoided if the jury is instructed that it "must be unanimous about the specific act that formed the basis for [the charged] count." **State v. Marcum**, 166 Wis. 2d 908, 918, 480 N.W.2d 545 (Ct. App. 1992). As pertinent here, WIS JI—CRIMINAL 517 provides:

> The defendant is charged with one count of [the name of the offense]. However, evidence has been introduced of more than one act, any one of which may constitute [the name of the offense].
>
> Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged.

¶56    Blasel argues that trial counsel was ineffective for failing to request this instruction. He asserts that A.B described "two" incidents of sexual assault "in great detail" in her forensic interview; although Blasel does not specify the two incidents, he is likely referring to the wintertime incident that occurred in Blasel's room when A.B. was in her second-grade year and another incident that occurred in the other bedroom at an unspecified time. Blasel argues that either of these two

21

acts could separately constitute the one count of sexual assault charged, and therefore, it was "incumbent" on trial counsel to request a unanimity instruction.

¶57    We disagree.  Blasel's assertion that A.B. described two incidents of sexual assault "in great detail" is not supported by the record.  Blasel was charged with having sexual intercourse with A.B., and the only act of intercourse that A.B. described was one that occurred in Blasel's bedroom in the winter of her second-grade year, during which Blasel forced A.B. to engage in oral sex.  Aside from this incident, A.B. did not describe any other assault.  To be sure, the interviewer asked A.B. to describe an assault that occurred in the other bedroom, but the conversation on this point was brief, and A.B. did not describe any conduct that could satisfy the definition of "sexual intercourse."  *See* WIS. STAT. § 948.02(1)(e); WIS JI—CRIMINAL 2102E.  With respect to the incident in the other bedroom, A.B. said that Blasel did the "tongue thing," put her on the bed, and took off his clothes, but she then stated that she couldn't "remember the rest."  Thus, contrary to Blasel's assertions, this was not a case whether there was more than one act that could "constitute the criminal offense charged."  *See **Lomargo***, 113 Wis. 2d at 590.  We therefore are not persuaded that counsel was deficient for failing to request a unanimity instruction.

¶58    Nor was Blasel prejudiced by counsel's failure to request a unanimity instruction.  To evaluate prejudice in this context, we consider whether there is a reasonable probability that jurors convicted Blasel without unanimously agreeing on the same underlying act.  *See **Marcum***, 166 Wis. 2d at 925 (concluding that the defendant was prejudiced by his trial counsel's deficient performance because the defendant did "not know[] what act he [stood] convicted of" and because his guilty verdict could have been based on an act "for which the jury … found him not guilty").  Here, as noted, A.B. only described one incident

of "sexual intercourse"—the "winter incident" that happened in Blasel's bedroom during her second-grade year when there was snow outside. Even if we assume that some jurors would have been persuaded that Blasel had committed other assaults, the record here shows that the jury was told that its verdict should be based on the winter incident alone. That is, the State acknowledged that A.B. referenced other incidents in the course of the forensic interview; however, the State explicitly told the jury that it did not charge Blasel "with any other incidents," aside from the incident that occurred "between November and March," when there was "snow coming down in the window, [and] snow on the ground." Given this record, we are not persuaded that there is a reasonable probability that jurors were not unanimous in convicting Blasel based on the winter incident.

### III. Cross-Appeal: A.B.'s Healthcare Records

¶59 Blasel argues that the circuit court erroneously excluded A.B.'s healthcare records from trial. Before addressing the merits of this argument, we begin by providing some additional background on the law and the court's decision to exclude A.B.'s healthcare records.

¶60 Healthcare records like A.B.'s are generally privileged from disclosure under WIS. STAT. § 905.04(2).[6] However, at the time that Blasel filed his motion, this court's decision in *Shiffra* set forth a process by which a criminal defendant could, under certain circumstances, obtain a victim's privileged records. If the defendant wished to obtain a victim's records, the defendant had to

---

[6] WISCONSIN STAT. § 905.04(2) provides in relevant part: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition[.]"

demonstrate a reasonable likelihood that the records would be necessary to a determination of guilt or innocence. *See Johnson*, 407 Wis. 2d 195, ¶¶9-10. If the defendant made that showing and the victim waived the privilege, the court would conduct an in-camera inspection, after which the court could order that [relevant] records be released to the defendant. *See State v. Solberg*, 211 Wis. 2d 372, 386-87, 564 N.W.2d 775 (1997); *Green*, 253 Wis. 2d 356, ¶31.

¶61 Importantly, under *Shiffra*, a victim was not required to hand over the victim's healthcare records to the circuit court for an in-camera inspection, *see Johnson*, 407 Wis. 2d 195, ¶9, nor was the victim required to release the records to the defendant after the court determined that the records must be disclosed, *see Solberg*, 211 Wis. 2d at 386-87. The victim could instead choose to exercise the victim's privilege against disclosure; however, if the victim opted for this route, the victim was prohibited from testifying at trial. *See Johnson*, 407 Wis. 2d 195, ¶11. As the *Johnson* court put it, the *Shiffra* scheme put victims "between a rock and hard place: Either turn over the privileged health records … or be precluded from testifying at trial." *Id.*, ¶9.

¶62 Turning back to the present case, as noted, Blasel filed a pre-trial motion requesting an in-camera inspection of A.B.'s healthcare records, and the parties followed the procedure outlined above. A.B.'s mother waived A.B.'s privilege on her behalf, and the circuit court then conducted an in-camera inspection. After reviewing the records, the court determined that there was information in the records that it found to be exculpatory and ordered that the records be released to Blasel. It appears that Blasel intended to use portions of these records at trial as part of his defense.

¶63    However, just before Blasel's trial was scheduled to begin, our supreme court decided *Johnson*.  As pertinent here, the *Johnson* court overruled *Shiffra*, holding that courts can no longer compel in-camera review and disclosure of a victim's privileged, privately held healthcare records.  *See id.*, ¶47.  The *Johnson* court reasoned that there is no constitutional right for criminal defendants to access such information about victims, *see id.*, ¶25, and there is no exception in WIS. STAT. § 905.04(2) that allows for forced disclosure of healthcare records in criminal cases other than homicides, *see id.*, ¶27.

¶64    On the eve of trial, the State filed a letter asking the circuit court to order Blasel to return the healthcare records and to exclude the information in the records from trial in light of *Johnson*.  Specifically, the State argued that Blasel had "no legal basis for possessing or using the victim's privileged health records" given that *Shiffra* had been overturned.  According to the State, this was so because new rules of criminal procedure, like that in *Johnson*, apply retroactively to all cases that are not yet final.

¶65    The circuit court ordered that the parties could not use the records at trial and could not present any information that was solely sourced from the records.  The court stated that the *Johnson* court had been "pretty blatant" about overruling *Shiffra* and that *Johnson* applied retroactively to this case, given that the case "ha[s]n't yet been decided as far as [going] to trial."

¶66    The parties disagree about whether the circuit court erred when it excluded A.B.'s privileged healthcare records.  Specifically, they disagree about the scope of *Johnson*'s holding, and more specifically, about whether *Johnson*

25

renders the records that were already released to Blasel under the now-overruled *Shiffra* scheme inadmissible at trial.[7] We need not resolve this dispute because we conclude that, even assuming but not deciding that the court erred in excluding the evidence, any error was harmless.

¶67 We review the circuit court's decision to admit or exclude evidence for an erroneous exercise of discretion. *See State v. Hunt*, 2014 WI 102, ¶20, 360 Wis. 2d 576, 851 N.W.2d 434. But even if the court erroneously exercises its discretion in admitting or excluding evidence, we will not grant a new trial if the court's evidentiary error was harmless. *See id.*, ¶21; WIS. STAT. § 901.03(1). An error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Hunt*, 360 Wis. 2d 576, ¶26 (citation omitted). Under the circumstances here, it is the State's burden to prove that any error was harmless. *Id.*

¶68 In evaluating whether an error was harmless, we consider, among other things, "the importance of the erroneously excluded evidence." *State v. Monahan*, 2018 WI 80, ¶35, 383 Wis. 2d 100, 913 N.W.2d 894 (2018). This

---

[7] More specifically, Blasel argues that the circuit court misapprehended the holding in *Johnson*. According to Blasel, although *Johnson* prevents defendants from discovering a victim's privileged healthcare records, it has "absolutely nothing" to do with the admissibility of records that have already been disclosed and are in the defendant's possession based on *Shiffra*. Thus, as we best understand, the crux of Blasel's argument is that he is insulated from *Johnson* because he did not seek to discover A.B.'s healthcare records after *Shiffra* was overruled.

The State's position is that *Johnson* does not insulate defendants that already received records under *Shiffra*. Specifically, the State argues that, because *Johnson* established that a criminal defendant "never had a right to access" privileged health care records in the first instance, it follows that a defendant would have "no right" to introduce information solely obtained from such records at trial. According to the State, this is a "new rule" for the conduct of criminal prosecutions, and it cites to *State v. Koch*, 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993) (citation omitted), for the proposition that such rules apply "retroactively to all cases … not yet final."

factor is pertinent here—as the State points out, Blasel does not argue that the healthcare records contained any information that was critical to his defense. At most, Blasel asserts that the information in the records was "exculpatory" because it "consistently" referenced A.B.'s "anger, anxiety, [and] depression." Although information about A.B.'s mental health could conceivably factor into the jury's assessment of her credibility, the fact that A.B. was purportedly angry, had anxiety, and was depressed would also be entirely consistent with her claim that she had been a victim of sexual assault.

¶69 Moreover, it appears that, at least to some extent, the underlying information that Blasel wanted to introduce from the records was duplicated in evidence that Blasel obtained from other sources. *See Monahan*, 383 Wis. 2d 100, ¶35 (evidence that "duplicates untainted evidence" weighs toward harmlessness). Trial counsel represented to the circuit court that the information in A.B.'s records was information "that … he did also obtain by other means other than the records," and the court told counsel he could present such information, provided that it came from a source other than her healthcare records. It appears that counsel took the court up on this—indeed, in counsel's questioning of A.B.'s mother, counsel elicited testimony about A.B.'s mental health history, her diagnoses, and medication use. Blasel does not suggest that there was additional information he was prevented from introducing at trial.

¶70 The State makes a persuasive showing on harmless error in its cross-appeal respondent's brief, and Blasel does not address harmless error at all in his reply brief. We take Blasel's silence on this topic as a concession that any error in excluding A.B.'s records was harmless. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a

concession). Based in part on this concession, we conclude that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the [purported] error." ***Hunt***, 360 Wis. 2d 576, ¶26 (citation omitted).

## CONCLUSION

¶71     In sum, we conclude that the postconviction court erred in granting Blasel a new trial on the ground that his trial counsel was constitutionally ineffective. We further conclude that Blasel is not entitled to a new trial based on the other arguments he advances in his cross-appellant's brief.

*By the Court.*—Judgment affirmed; order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.